The first argument is in related cases Plymouth Venture Partners v. Capital Merchant Services and I think it's also Plymouth Venture Partners v. GTR Source. Mr. Heskin, are you on the line for appellants? Yes, I am, Your Honor. Let me just make sure I can see you. I heard you, but I don't see you. There you are, Mr. Heskin. I can see and hear you. And you can see and hear the panel? I can see you. I think there's a way to put this on. Gallery view. Gallery view. I can see everyone now. Thank you. Okay. Terrific. And then for appellees, we've got three lawyers splitting the argument. Mr. Cummings, for six minutes. Mr. Cummings, are you there? Yes, Your Honor. I'm here. Great. And you can see and hear all? Good. Mr. Murray, for three minutes. Yes, Your Honor. I can see and hear all right. Good. And we can see you. And Mr. Shriver, am I pronouncing that right? It is correct, Your Honor. And I can see you just fine. Okay. Terrific. So, Mr. Heskin, you've got 12 minutes, but you've reserved three for rebuttal. So, the first nine minutes are yours now. You may proceed. Thank you, Your Honor. May it please the court. The Bam-Bam decision, which was principally relied upon by the lower court, is wrong both on the law and on the policy. First of all, Bam-Bam was purely a policy-driven decision. And I think the easiest way to explain how it was wrong is to give a real-life example. Take, for example, I'm a collection attorney. I get paid 40 percent… I'm sorry. Very simple. Remind me the court and the year for Bam-Bam. Bam-Bam was a lower court decision. It was decided in 2018. It's just a trial court decision, Your Honor. State… State trial court, correct. Thank you. Thank you. So, principally, Bam-Bam held that there are no damages because there was a valid judgment. So, take, for example, I'm a collections attorney. It's a valid judgment. No dispute about that. But I collect upon it illegally. Do I… I get a 40 percent commission. So, I have a contingency. I get 40 percent from my client. Do I get to keep that if I do it unlawfully? That's the question. I obtain it illegally. No question about it here that this was unlawfully collected. Do I get to keep that money? Absolutely not. There's no doubt. There's no one in this courtroom that could say, I get to keep that money. It would go back to the debtor, and then they would… I would get disbarred, and then he'd have to hire an ethical attorney that follows the law and collects that money back. It is totally improper for the client of mine to reap the benefits of my unlawful behavior. The same thing goes with the marshal. You have to remember about the marshal. He's not just a salaried civil servant that's carrying out his duties. He is making a profit just like an attorney who's a collection judgment debtor. He gets paid a commission, a poundage fee, for collecting it. And so when he acts within the scope of his authority, he does have a quasi immunity. Where he doesn't do that is when he acts outside of his authority. Now, what the Bam Bam Court did is they looked at Silverstein and it misconstrued Silverstein. What the Bam Bam Court said was, listen, there's no way that the marshal would have known that the underlying judgment was invalid. The attorneys did, and therefore they're liable because they knew that what they did was wrong. But there's no way for the marshal to have known that, and therefore why should we pass liability on to him? And that was the rationale of Bam Bam. But the rationale of Bam Bam is wrong. Because here, the marshal absolutely knew what he was doing was wrong. He absolutely knew he was going outside the scope of his authority. He knew his territorial limit was New York City. Nonetheless, he levied an account in Michigan, and he violated it in several ways. I think we get all that, but I guess the issue is, are there damages, and is that relevant, or is it even dispositive? That's the issue, right? Sure. And it all goes, there are damages. Clearly, there was money in the account, and then there wasn't money in the account. And there's been a common law right of action for trespass, for unlawful execution for hundreds of years. There's clear common law authority for that. The problem that I see here, as far as the damages are concerned, is that you recover, as far as you recover the damages, you still owe the creditor, right? That's a great point, Your Honor. Absolutely great point. If you still owe the creditor, and that amount is in excess of what you would recover, then what are your damages? Because the money would immediately have to go, it would have to go maybe to you, and then back to him? I mean, you know, that makes no sense. Your Honor, no, that's a fantastic point. And that's not how it would happen, though. Because that's the concept of offset. And here, what would happen is, what you have to remember is the position I'm in now. I'm in the position of FutureNet's senior secured lenders. So it would go back to the receiver, and then he would disperse it in order of preference to whoever is right. So the money would come back to the receiver. Everybody can put their claim in. And guess who that money would go to? It would go to the senior secured creditor, whom I am now representing. My client's a nonprofit who had senior secured rights and is now being victimized because the marshal decided to violate the law. My client abided by the law. And I'd direct your attention to the Lyons case that we cite in our brief, which is a Southern District of New York case from 1990. And I'll read it. It's great, because here it says, And in doing so, it gained an unfair advantage over other creditors who saw fit not to engage in other similar conduct. The preference that it wrongfully obtained over those creditors clearly constitutes the kind of unjust enactment which equitable principles should foreclose. Indeed, it would be harsh. Mr. Heskens, it seems to me you're citing Southern District of New York cases interpreting New York law. You're citing old, ancient common law cases. You're citing trial court cases from Kings County that you say are wrong, but Rockland County that might be right. The New York State Court of Appeals hasn't ruled. Why don't we certify this for them and let them decide whether foot faults or worse by a marshal leads to the remedy that you're asking for? I would jump up and down and welcome that. I would defend this easily. There's no way the New York Court of Appeals is going to allow this. It's just not going to happen. Look what's happened since the Bloomberg articles. You had the legislature jump on all up and down and get rid of the confession of judgment statute, which this case came from. You've now had the legislature enact disclosure laws for MCAs. The FTC sued CMS Yellowstone, one of the defendants in this case. The New York Attorney General has sued Yellowstone claiming that it's engaged in unlawful moansharking, and that's another principle. This is all assumed. Remember that this is undisputed that this is a lawful judgment. The New Jersey Attorney General has sued Yellowstone seeking to enjoin it from enforcing these judgments. New Jersey Attorney General is saying these are illegal. You can't enforce it. The fundamental premise that there's no dispute that this is a lawful judgment just doesn't exist. That happened after the briefing in this case. The FTC sued Yellowstone. The New Jersey Attorney General, that's public knowledge in December of just last year. That fundamental premise just doesn't exist. As to the certification, I don't think you need to do that because we have the law here. We don't have the law from the New York Court of Appeals. We have the law as far as offense. Just think of it in terms of the attorney. If I did this, do you really think you'd have to certify that? If I went out there and unlawfully, I violated the law, I took the money and said, put it in my account and disbursed 40% to me and 60% to my client, would you really have to certify that to the New York Court of Appeals and say, do I get to keep that money just because it's a valid judgment? I thought a minute ago you were applauding certification. Now you seem to be aghast. No, he was jumping up and down as best I could. I would certainly welcome it. I don't think there's a doubt in my mind that the Court of Appeals would rule in our favor. That's why I don't think you need to certify it because I think it's such an easy question. I see my time is running out. It's such an easy question. It really does not need to be certified. I can't go out there, unlawfully collect on a valid judgment and then keep the profits. My client cannot reap the benefit of my unlawful conduct. I see my time is up. Thank you, Your Honor. All right, well, you've reserved time for rebuttals. We'll now hear from appellees, beginning with Mr. Cummings. Thank you, Your Honor. If it pleases the Court, the Court has already sort of put their finger right on the dispositive issue here, which is… I'm sorry. Since there are three of you, as you start, if you could say who your client is, it would help on a Zoom argument. I apologize. I represent GTR Source LLC. Right. And one of the two creditors that are involved in these appeals. And the principles here are basic tort principles. So, respectfully, I don't know that a referral to the Court of Appeals or a certified question to the Court of Appeals would be necessary in this instance because we are talking about the application of relatively basic tort principles, which is to have an actionable tort, you have to have some form of damages by the plaintiff. And it's important here to point out who the plaintiff is. The plaintiff in this instance is FutureNet, who was the debtor. And then we had a receiver come in and be appointed to step into the shoes of that debtor. And now we've had an assignment from the receiver to these two other investment creditors. They stand in the shoes of FutureNet. This is not a case about their purported independent damages. The question is, did FutureNet suffer any damages as a result of the conduct that's been alleged? Because of an offset. I mean, that's basically it, right? Well, and actually the district court addressed at some length in a very long footnote whether or not the doctrine of offset is even applicable in this instance and correctly found that it was not. Because there's no mutuality of debts here. Before GTR received these money, it didn't owe a debt to FutureNet. It was owed money by FutureNet. So there's no mutuality of debts here such that the doctrine of offset is even implicated. And so what we have here is, it's uncontested, I think, although counsel just waffled on this a little bit, uncontested that we have a valid judgment. It's been litigated twice in state court. The judgment was upheld. It was not vacated. Those two motions to vacate the judgment were denied. So we've got a valid judgment and we've got a situation where a valid judgment was satisfied by the judgment execution devices at issue here. And it's actually, it's undisputed. They admitted in their statement of undisputed facts at pages 420 and 421 of the record. So now the question is, was FutureNet damaged even as a result of this allegedly improper collection activity? And what we've just heard from counsel is, no, they're not, FutureNet is not seeing a dime here. Even if we played this all the way through, the money would go back to the estate and then go out to other creditors. The other creditors, who are really now the appellants in this case, their damages, alleged damages, are irrelevant. And they had a means, if they truly thought that they had priority to these funds, they had a means to go into New York State court and get a judgment that would vacate the execution and levy that's the subject of this appeal. And they could seek reimbursement, restitution of the funds that were taken. They also, under New York CPLR 5239, have gone in and gotten an order that said, this is the priority of creditors and this is how the money should flow. They didn't do that. They challenged the judgments, the validity of the judgments. They lost twice, and now they come to this court with a tort theory that, frankly, has been addressed on all fours by that Bam Bam Entertainment v. Pagnotta case, which is virtually indistinguishable from the case here. There, the marshal issued an execution levy on a bank in Ohio instead of Michigan. But it was the same claims in that case that have been asserted here. But of course, we're not bound by that, right? I mean, the whole reason we're talking at all about certification is because that's not binding on us. We can follow it, but it's not binding on us. You're correct, Your Honor, and I'm not contending that you are bound by it, but the rationale… But wait, it's not that we're not bound by it. It's that there's conflicting authority from a different trial court in Ontario County, right? Silver Cup funding. Well, Silver Cup funding actually did not address the liability of the marshal. Silver Cup funding, which was submitted just the other day on January 25th by counsel, touches upon the separate entity rule. But it involves an improper execution and levy, right? It involves an alleged improper execution and levy, but in that instance, Your Honor, they did exactly what they could have done in this instance, which is they made a CPLR 5240 motion to vacate the alleged improper… I get that, but the court also found that a judgment creditor may have a cause of action for damages in a separate plenary action, right? The court did say that in that case, and what I would point out is what they actually did was misapply the separate entity rule because they ignored the distinction in the Kohler case from the New York Court of Appeals, which said pre-judgment attachment has territorial limitations. However, post-judgment enforcement actions are not subject to those territorial limitations. And they actually cite the National Union case, which was a pre-attachment case. So, respectfully, the Ontario case that was just recently submitted to the court misapplied controlling New York Court of Appeals authority in Kohler. So, I don't think in this instance we're talking about an application of new tort theories. And I would just conclude by pointing out that numerous courts, including the Ninth Circuit, have found that where the money is taken and used to pay off a lawful debt there are no damages to the debtor. Ninth Circuit has said it, the D.C. Circuit has said it, and we cite some cases from the district courts. There could be damages, correct, if there were some other theory of damages such as unnecessary litigation or legal fees or something of that sort. But I gather here that the only damages that are sought are related to the judgment itself. The only damages that have been alleged here, Your Honor, are actually with regard to other creditors who are not even parties to this lawsuit. That's who the real appellants in interest are right now, are those other judgment creditors. FutureNet, the debtor here, won't see a dime even if there was some form of restitution because it will go to other creditors. Thank you. Okay, Mr. Murray, you've got three minutes. Thank you, Your Honor. At Capital Merchant Services, I think the interesting line from the Silver Cup funding case that counsel cited really comes at the end of the decision. If process is vacated because of irregularity, e.g., lack of jurisdiction, an action may be brought after the vacature in the nature of trespass. That's kind of the key point of that decision, that there is a prerequisite, that you have to vacate that execution, that levy in demand. And it cites two New York State appellate division cases from the last few decades for that proposition. So, to the extent that Silver Cup is a persuasive case, it's persuasive in the sense that they haven't done what they're supposed to do. They have not filed a motion to vacate the execution. And, in fact, for three years now, we've been saying that that was their requirement. And for three years, they've chosen not to do that. The major factor is that as a condition precedent, they haven't satisfied that. They haven't gotten to that point. The other major facts in this case are pretty straightforward. The debtor authorized Comerica Bank to honor an execution and levy no matter where it was served. It's in the record. It's Joint Appendix 79, Section 3.04. They authorized to accept service anywhere. This isn't a case where service was necessarily improper. They consented to this happening. So, that consent expanded the power of the marshal. Parties can privately enhance the statutory authority that a marshal has. Is that what you're saying? Respectfully, Your Honor, no. The marshal has nothing to do with my case. My case was served by a sheriff and properly served by a sheriff. The only question was whether that location was a proper service location and to which they consented specifically. Now, parties and litigants are allowed to consent to service all the time. In fact, they do routinely accept service via alternative methods. You might be in a different position than Mr. Comerica. I am in the sense, and Mr. Heskin's brief cited or said this pretty outright. There is no question that my execution and levy are facially valid. His only objection is to the method of service and jurisdiction, which is specifically the thing that says that you must first seek to vacate the execution before you can even attempt to. Part of that is fairly straightforward. If they had made a motion under CPLR 5240, the trial court in New York could have crafted a remedy that would have given them restitution if it thought that that was appropriate. They haven't done that. They haven't done anything to this effect. Had they done so, they might have said, well, you have no claim for tort damages because you have no injury after we direct the money to be returned. Perhaps we'll never really know here because they haven't challenged the execution properly and because the judgment itself is valid and the execution is valid. They haven't challenged any of this appropriately. So they are in a position in that they have no way to proceed here. I think that the issue is they're trying to expand tort liability beyond that which has ever been contemplated by any court. And as a straightforward matter, this court should decline to expand tort liability. If there was a remedy, the remedy was CPLR 5240. If a creditor or a competing creditor had a claim, it had a remedy in a simple petition under Article 52, CPLR 5239, it could have made a challenge. No one has ever raised an objection properly at any point in time. They shouldn't be allowed to now seek tort damages. And it wasn't that they're here seeking just the money to be returned. They're also asking punitive damages against my client. That's simply not appropriate. They're asking for damages and a recovery that are simply not things that they can recover. And on that basis, I think that the trial court got it absolutely right. The trial court saw it correctly. And it could have simply decided the case on their consent. It did not. And interestingly enough, the Balthazar case that counsel has cited, it deals with the FDCPA. And under the FDCPA, they didn't need to show damages in that case because there was a statutory claim giving them $1,000 damages. This isn't a consumer case, so there is no ability to proceed without an actual tort damage. And to the extent that the Balthazar case cites anything, it cites McCarthy v. Wachovia. And in McCarthy v. Wachovia, a trial court, the Eastern District of New York, specifically found that no issue would serve as a process in that case because once again in that case, a judgment debtor had consented to its bank to honor a subpoena served or an execution served, however it was served and wherever it would be served. There's simply no injury. In fact, there's really no wrong here. Everyone did what they said they were going to do and everyone consented. All right. Well, I think we've gone over with respect to you, Mr. Murray, but we'll now hear from Mr. Shriver. Thank you. Thank you, Your Honor. I represent Marshall Beagle. And my colleagues have highlighted a lot of the core principles here, and I think they've been articulated a little bit from the bench. The core being coming down to the proposition of if there's, for any claim, tort claim or otherwise, the basic principle of jurisprudence is if there's, you have to establish not only liability but damages in an injury. Notably, I think I heard Appellant's counsel suggest something different in terms of the relief he's seeking against the marshal vis-a-vis what was in his complaint. And I would just point out in the record, at JA-26, the wherefore clause of the complaint seeks to hold the marshal liable for all of it. That's an absurd result. And the district court, I think, latched into the reasoning in Pagnotta, and I just want to remind the court that key basis of the reasoning, and this is just a quote, where the court says there's simply no factual basis to find the marshal knew or should have known the debt owed by the judgment debtor and the plaintiff is invalid, and very importantly, and that to hold marshals would be required to evaluate the validity of a judgment would be to create an expensive and unmanageable burden not intended or otherwise codified by the legislature and not one recognized in over 170 years of established jurisprudence. Beyond that, the key policy at stake here is that if, in fact, this court or any other court should hold, it's enough to show that the marshal didn't do something that was procedurally appropriate, and then guess what? They're saddled with the debt. Now, in this case, you're talking about $127,000. In many cases in New York, as we all know, you're talking about multi-millions of dollars. That holding will apply no matter what the size of the case. The marshal goes beyond the bounds of the city. No damages to the plaintiff, which my colleagues have already talked about, and I'll just echo, they stand in the shoes of the debtor, and the receiver, representing the other creditor entities, had a separate remedy, which is already there. So we're dealing with a separate complaint, separate cause of action that was never brought and not in front of us here. The policy concept, though, is that if this court rules, according to the relief in the complaint sought, that a marshal can be liable to take on the judgment debtor's entire debt by virtue of a procedural irregularity, I cannot think of a single marshal in New York City or anywhere else that would be willing to have their office put themselves on the line in the name of that debt. And then just a couple of other pieces, I just want to make sure that we've covered. Actually, I think that's really the primary principle. It really boils down to, and I'll just sort of finish it with one point that Appellant's counsel made, which is there are alleged damages, is that the money was in the account and then it wasn't. But as was pointed out from the bench, that would be the case no matter what, because if the money comes back, it just goes to a different creditor. And what was clearly articulated from Appellant is that really what's at interest here is this is a claim by someone else in the debtor's clothing, that this is really an attempt to pull back the money so that another creditor could get a hold of it. But even if that happens, there is no benefit to the actual plaintiff here, which goes to one last point about damages. It was asked whether or not there could be collateral damages, such as attorney's fees. My answer to that would be you should not be entitled to get collateral damages and attorney's fees chasing a claim that doesn't have merit from the beginning because you can't satisfy the element of damages. And on that, I'll rest. All right. Thank you, Mr. Shriver. We'll now hear from Mr. Heskin for three minutes of rebuttal. Thank you, Your Honor. There is a very good reason why the marshals should be held accountable. They make millions of dollars a year off the backs of small businesses. Hold them accountable? Absolutely. And you know why? The key distinction is what Mr. Murray raised. Why didn't I sue the sheriff? Because the sheriff complied with his jurisdictional territory. This rule would not curtail a marshal collecting on a judgment. What it would do, it would ensure that the marshal complies with the law. The sheriff in this case served it within its jurisdictional territory. That's why the sheriff wasn't sued. He didn't do anything that was knowingly wrong. Here, Marshal Beagle did. He knew he couldn't execute outside of his jurisdiction. He knew he had to hand-serve the levy. And he didn't do it. Mr. Heskin, can I ask you a question? Yes. I was under the impression that New York law required damages claims against the marshal to be brought in a New York County court, not federal court. It's not. If you look at the cases we cited, you can do that if you want to collect against their bond. If you want to collect against their bond, you can do it that way. That's for different claims where they're acting within the scope of their immunity, but there's voidable contests, etc. We cited a ton of case law. If you look at the Siegel case and the cases cited within it that specifically distinguish between being void and voidable, and I'll give you a good example. If, for example, a marshal collects on a judgment that was facially valid at the time and it's later overturned, the marshal's not liable for that. Why? Because at the time he collected upon it, it was valid, he didn't do anything wrong. But you'd be able to collect it from the judgment creditor because it was overturned, so you get it from the correct judgment creditor. The difference here is that it was void from inception because you don't even have to make, you don't have to, in order for an action to incept, you don't have to have it voided because it's void from the get-go. It's void ad initio from the start because he did it without authority, he did it outside of his jurisdiction, and when you act outside your jurisdiction, it's a nullity, period. It'd be like, if you endorse this rule, it would allow Marshall Beagle to come in and knock on the doors in Florida and California, show his badge, say, pay me or you're going to jail, take that money and collect it and say, hey, listen, you owe the judgment, it's valid, I can do it. There's nothing you can do about it. I get to collect my poundage and I can go out there and I can do anything illegal because it's a valid judgment. That can't be the law. It just can't be the law but what you're saying is the remedy for that is to get the entirety of the amount that was seized or collected, right? Yes, what would happen is Beagle would give the money back, that money would go, now the judgment wouldn't be satisfied. The judgment amount that was, say it was $500,000 and they got $500,000 back, now there would be, the judgment would be left for $500,000 because then the lawyer, Beagle would go to the judgment creditor and say, hey listen, this money had to be turned back, now you pay me, you reimburse me and then the judgment creditor would have to go and actually collect upon it legally. That's exactly what would happen and what would happen in this case, they try and go collect it. In an ordinary case, they'd probably be able to collect it but not in this case because there are senior secured creditors that are in front of them and what you really have to understand here is what's happening in reality. What's happening in reality is they're jumping ahead of people that complied with the law. They're jumping ahead of senior secured creditors. If they're allowed to do this, it's going to create chaos. It's going to encourage people to break the law, go out and collect under any means, it doesn't matter, I've got a valid judgment, I can do whatever I want. I can jump in front of senior secured creditors. The remedy then would be that the agreed parties could move to vacate a judgment. But that's not the only remedy. But the parade of harm that you just described for me could be addressed by moving to vacate a judgment, right? It could be and it's more costly than that. Look at what you have to do to vacate a judgment in New York. You have to start a plenary action. You have to take defense. You have to take discovery. You have to engage in length. You have to trial on the merits potentially. It's a lot more burdensome to have to try and attack the judgment itself. And then why would you put that burden on an innocent senior secured creditor? They've got to come in and attack the judgment or they have to come in and do all this. The rule that is under BAMBAM would encourage more litigation with the judgment creditor. But also it would require senior secured creditors, innocent ones, that follow the law to incur more legal expenses to enforce their rights just because they complied with the law. That shouldn't be the law, Your Honor. All right. Well, we'll leave it at that. Thanks very much to all of you. It was well argued. We will reserve decision.